IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN KEITH BRAGG,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CHARLES ELLIS, et al.,<br><br>　　　　　Defendants. | Civil Action<br>No. 15-7638 (AET-LHG)<br><br>**OPINION** |

APPEARANCES:

Brian Keith Bragg, Plaintiff Pro Se
#533330
Mercer County Correctional Center
PO Box 8068
Trenton, New Jersey 08650

RECEIVED
DEC 09 2015
AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

**THOMPSON, District Judge:**

**I.   INTRODUCTION**

　　Before the Court is Plaintiff Brian Keith Bragg's ("Plaintiff"), submission of a civil rights complaint pursuant to 42 U.S.C. § 1983. (Docket Entry 1). Plaintiff is a pretrial detainee currently confined at Mercer County Correctional Center ("MCCC"), Trenton, New Jersey. By Order dated October 28, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). (Docket Entry 2).

　　At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes the complaint shall proceed in part and shall be dismissed in part.

## II. BACKGROUND

Plaintiff filed this complaint against MCCC Warden Charles Ellis, Lieutenant Phyllis Oliver, and Sergeant Kalownoski (collectively "Defendants") alleging violations of his First, Eighth, and Fourteenth Amendment rights. (Docket Entry 1 at 6-7). The following factual allegations are taken from the complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that on October 9, 2015, he was transferred from Atlantic County Justice Facility ("ACJF") to MCCC out of retaliation for filing lawsuits against ACJF and its employees. (Docket Entry 1 at 8). Upon his arrival at MCCC, Sergeant Kalownoski placed Plaintiff in the R&D Detention unit. (Docket Entry 1 ¶ 2). He alleges he has been kept in disciplinary detention on the orders of Warden Ellis and Lieutenant Oliver even though he has not been charged with any disciplinary violations or "provided a hearing for involuntary administration [sic] segregation or protective custody. . . ." (Docket Entry 1 ¶¶ 3-4). He believes Warden Ellis and Lieutenant

2

Oliver ordered him to be placed in disciplinary detention "out of retaliation for filing lawsuits against MCCC employees," and alleges Sergeant Kalownoski told him "'things like this wouldn't be happening if you wasn't [sic] filing all them [sic] lawsuits." (Docket Entry 1 ¶¶ 6-7). Plaintiff also indicates corrections officers and other inmates threaten him with "violence, death and harassment on a daily basis . . . ." (Docket Entry 1 ¶ 8).

Plaintiff states that due to his bipolar disorder, maniac mood swings, depression, A.D.D., A.D.H.D., and schizoaffective disorder, his continued confinement in R&D detention will result some form of self-harm or suicide. (Docket Entry 1 ¶¶ 11, 13). He indicates he suffers from "loss of [appetite], crying spells, [difficulty] concentrating, nightmares, hearing voices, racing thoughts, jumpy, fearful, anxiety, tremors, depression, and suicidal thoughts." (Docket Entry 1 ¶ 12). He states that he has attempted suicide in the past, including times in which he was confined "under similar conditions[.]" (Docket Entry 1 ¶¶ 14-15). He also asserts that he has talked to "every supervisor who has walked by his cell" and informed them that his "current confinement is making [him] 'feel completely unstable.'" (Docket Entry 1 ¶ 17). According to Plaintiff, no one has attempted to help him.

Plaintiff further alleges that Defendants have conspired to retaliate against him, and Warden Ellis and Lieutenant Oliver have thrown away the letters and grievances he sent them asking to be placed in general population. (Docket Entry 1 ¶¶ 18, 21). He seeks punitive and treble damages. (Docket Entry 1 at 12). He also requests injunctive relief in the form of an order requiring the prison release him from the R&D Unit and implement a plan to protect him from violence. (Docket Entry 1 at 9, 12; Docket Entry 4).

### III. STANDARD OF REVIEW

#### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A because Plaintiff is a prisoner

4

proceeding *in forma pauperis* and is seeking relief from governmental employees, and under § 1997e because Plaintiff is bringing claims regarding the conditions of his confinement.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

6

## IV. ANALYSIS

Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights, specifically retaliation and conspiracy claims. The Court also construes the complaint as raising denial of medical care claims.

### A. Eleventh Amendment

To the extent Plaintiff seeks monetary damages from Defendants in their official capacities,[2] he is barred by the Eleventh Amendment. Eleventh Amendment immunity "protects both states and state agencies 'as long as the state is the real party in interest.'" *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (per curiam) (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc)). A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930-31 (1997) (quoting *Will v.*

---

[2] The Eleventh Amendment does not bar Plaintiff from seeking injunctive relief from Warden Ellis in his official capacity. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("The theory behind *Young* is that a state officer lacks the authority to enforce an unconstitutional state enactment, and thus the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct." (internal citation and quotation marks omitted)).

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The *Will* Court concluded that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71; *see also Smith v. New Jersey*, 908 F. Supp. 2d 560, 563-64 (D.N.J. 2012).

Plaintiff's claims for monetary damages from Defendants in their official capacities must therefore be dismissed with prejudice.

## B. Retaliation

Plaintiff alleges Defendants placed him in disciplinary segregation out of retaliation for filing grievances and lawsuits against MCCC employees. (Docket Entry 1 ¶¶ 3-6).

"[R]etaliation for the exercise of constitutionally protected rights . . . 'is itself a violation of rights secured by the Constitution actionable under section 1983.'" *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (quoting *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990)). Plaintiff must allege "(1) he engaged in constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015).

8

"[T]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity." *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (per curiam). Construing all inferences in Plaintiff's favor, Plaintiff has sufficiently alleged Sergeant Kalownoski retaliated against him by placing him in the R&D Unit, but he fails to state a cause of action against Warden Ellis and Lieutenant Oliver. According to the complaint, Sergeant Kalownoski stated "'things like'" being placed in R&D "'wouldn't be happening if'" Plaintiff were not filing lawsuits. (Docket Entry 1 ¶¶ 2, 7). That statement coupled with its temporal proximity to Plaintiff's placement supports an inference that such placement was intended to penalize Plaintiff for filing lawsuits.

Unlike his allegations against Sergeant Kalownoski, Plaintiff's allegations against Warden Ellis and Lieutenant Oliver are nothing more than conjecture and speculative statements. The conclusory statement that they ordered Plaintiff's placement in R&D is not supported by facts that would enable this Court to reasonably infer they were in fact involved in Plaintiff's placement for retaliatory purposes. (Docket Entry 1 ¶ 3). Plaintiff's retaliation claim may only

proceed against Sergeant Kalownoski;[3] however, he may move to amend his claims against Warden Ellis and Lieutenant Oliver.

## C. Conspiracy

Plaintiff further claims that Defendants conspired to place him in administrative detention to punish him for filing lawsuits and grievances. "To make out a conspiracy claim under § 1983, [Plaintiff] must show that 'persons acting under color of state law conspired to deprive him of a federally protected right.' As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)).

As previously noted, Plaintiff has sufficiently pled his placement in disciplinary segregation was done in violation of the Constitution. He has not sufficiently pled, however, that there was a conspiracy between Defendants to violate the Constitution. "To constitute a conspiracy, there must be a meeting of the minds." *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)(internal quotation marks and citations

---

[3] To the extent Plaintiff raises violations of state retaliation law against Sergeant Kalownoski, *see* N.J. STAT. ANN. § 10:6-2(c); N.J. ADMIN. CODE § 10A:1-4.4(b), the Court will exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367(a).

10

omitted); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), *cert. denied*, 131 S. Ct. 1798 (2011). Plaintiff has only sufficiently alleged that Sergeant Kalownoski was involved in his unlawful placement. He has not sufficiently alleged that Warden Ellis and Lieutenant Oliver agreed with Sergeant Kalownoski's course of action. His conspiracy claim must be dismissed, but will be done so without prejudice as Plaintiff may be able to allege facts that would support his claim.

### D. Due Process

Plaintiff alleges he was placed into the R&D Unit without being charged with, or found guilty of, a disciplinary infraction. The Court construes this as a due process claim under the Fourteenth Amendment.

Analysis of a pretrial detainee's procedural due process challenge is governed by the standards set forth by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979); *Fuentes v. Wagner*, 206 F.3d 335, 341-42 (3d Cir.), *cert. denied*, 531 U.S. 821 (2000). In *Bell*, the Supreme Court stated:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee

11

>may not be punished prior to an adjudication of guilt in accordance with due process of law.

441 U.S. at 535-36. The Court further explained that "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment . . . ." *Id.* at 540. Retribution and deterrence, however, are not legitimate non-punitive governmental objectives, *id.* at 539 n.20, nor are grossly exaggerated responses to genuine security considerations, *id.* at 539 n.20, 561-62. In other words, to allege a violation of the Due Process Clause, a pretrial detainee must set forth sufficient facts indicating: (1) the conditions or restrictions do not serve any legitimate purpose; and (2) the conditions or restrictions are not rationally related to that purpose. *See Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (citing *Union County Jail Inmates v. Di Buono,* 713 F.2d 984, 992 (3d Cir. 1983)).

Once again construing all reasonable inferences in Plaintiff's favor, as the Court must do at this preliminary screening stage, this Court preliminarily finds that Plaintiff has sufficiently alleged a Due Process violation against Sergeant Kalownoski. He has set forth sufficient facts indicating he was placed into R&D Unit for an unlawful purpose, namely retaliation for filing lawsuits, without disciplinary

charges or hearing. As previously noted, he has not sufficiently alleged that Warden Ellis and Lieutenant Oliver had any knowledge of his confinement in R&D, therefore this claim may not proceed against them.[4]

### E. Denial of Medical Care

Plaintiff alleges that the conditions of his confinement have aggravated his previously diagnosed mental health conditions, he is suicidal, and that no one has intervened to help him. The Court therefore construes the complaint as attempting to raise a denial of medical care claim.

The Third Circuit has recognized that "[t]he Eighth and Fourteenth Amendments impose upon prison officials a duty to address the serious medical needs of a pretrial detainee, including psychiatric needs." *Serafin v. City of Johnstown*, 53 F. App'x 211, 213 (3d Cir. 2002) (internal citations omitted). Plaintiff alleges that he informed "every supervisor who has walked by his cell . . . that [his] current confinement is making [him] 'feel completely unstable[;]'" however, no one

---

[4] Plaintiff has not alleged that Warden Ellis or Lieutenant Oliver are liable for Sergeant Kalownoski's actions as his supervisors. The Court declines to construe the complaint as raising this theory of liability. Plaintiff may move for leave to amend his claims against them in the event he can allege facts that would support personal liability for either Warden Ellis or Lieutenant Oliver under *Barkes v. First Correctional Medical*, 766 F.3d 307, 316-17 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

attempted to provide him care or otherwise act on his behalf. (Docket Entry 1 ¶ 17). This barebones allegation is not sufficient to make out a claim for denial of medical care. There is no indication these unnamed supervisors knew about his mental health history or his past suicide attempts. Likewise, there is no indication that they in turn notified Defendants of Plaintiff's statements. (Docket Entry 1 ¶ 17). There is nothing in the complaint to suggest anyone "recklessly disregard[ed] a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)).

Plaintiff has also failed to state a cause of action for denial of adequate mental health care by displaying indifference to a suicide risk. "A particular vulnerability to suicide represents a serious medical need." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005); *but see Taylor v. Barkes*, 135 S. Ct. 2042, 2044-45 (2015) (reversing determination that there was a clearly established right to implementation of suicide prevention protocols at time of inmate's suicide). "If prison officials know of a particular detainee's vulnerability to suicide, they may not be deliberately indifferent to that vulnerability." *Serafin v. City of Johnstown*, 53 F. App'x 211, 213 (3d Cir. 2002).

To make out a claim for deliberate indifference to a suicide risk, Plaintiff must allege facts indicating "'(1) [he] had a "particular vulnerability to suicide," (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers "acted with reckless indifference" to [his] particular vulnerability.'" *Green v. Coleman*, 575 F. App'x 44, 48 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991); *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 669 (3d Cir. 1988)).[5] Accepting the facts alleged in the complaint as true for screening purposes only, Plaintiff has sufficiently pled that he has a particular vulnerability to suicide. (Docket Entry 1 ¶¶ 14-15).

Plaintiff has not sufficiently alleged, however, that any of the named Defendants knew about his particular vulnerability to suicide, or that they were recklessly indifferent to his risk of suicide. *See Green*, 575 F. App'x at 48. The complaint only alleges that Plaintiff wrote to Warden Ellis and Lieutenant Oliver "requesting to be returned to general population[,]" (Docket Entry 1 ¶ 21), but does not suggest he indicated there were medical reasons as to why he wanted to be moved. Plaintiff

---

[5] "'[T]he requirement of reckless or deliberate indifference implies that there must be a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.'" *Green*, 575 F. App'x at 48 (alteration in original)(quoting *Colburn*, 946 F.2d at 1024).

has therefore failed to plead facts that would support a reasonable inference that the defendants knew or should have known that he is at risk for suicide. This claim must be dismissed, but Plaintiff shall be permitted to move for leave to amend.

**F. Injunctive Relief**

Plaintiff also seeks an order from this Court that would require Warden Ellis, in his official capacity, to remove Plaintiff from the R&D Unit and to implement a plan to protect Plaintiff. (Docket Entry 1 at 9; Docket Entry 4).

Plaintiff has filed a motion alleging various corrections officers have referred to him as a "snitch" and "stool[ie]" in front of other inmates since the filing of his complaint. (Docket Entry 4 ¶ 4). He further alleges that the officers and inmates have threatened him with physical violence and death as a result, and that Warden Ellis has not intervened despite being made aware of the threats. (Docket Entry 4 ¶¶ 4, 7).[6]

Plaintiffs requesting prospective injunctive relief "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 101

---

[6] Plaintiff has not moved to amend his complaint to include these officers as defendants or to allege new claims. Should he wish to seek relief other than the injunctive relief requested in his motion, he must submit an amended complaint.

16

(1983)). "Allegations of exposure to illegal conduct in the past alone, without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* at 479 (internal citations omitted). A plaintiff must be able to show that a real and imminent harm will occur; a mere possibility of future harm will not suffice. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 300-01 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025 (2013).[7]

Plaintiff has sufficiently alleged that his detention in the R&D Unit is unlawfully punitive, that the constitutional injury is continuing in nature, and that he has been subject to threats of physical violence. Warden Ellis shall be ordered to show cause within 14 days of service why an injunction should not issue. Fed. R. Civ. Pro. 65.

## G. Leave to Amend

As Plaintiff may be able to allege facts that would address the deficiencies of his claims as noted by the Court, Plaintiff may move for leave to file an amended complaint. Any motion to

---

[7] Plaintiff must ultimately demonstrate "(1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). All four elements must be satisfied in order to grant the injunction. *Roberts v. Ferman*, 448 F. App'x 254, 256 (3d Cir. 2011).

17

amend the complaint must be accompanied by a proposed amended complaint and comply with Federal Rule of Civil Procedure 15 and Local Civil Rule 7.1.

Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, *Federal Practice and Procedure* 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court.

## V. CONCLUSION

For the reasons stated above, Plaintiff's retaliation and due process claims against Sergeant Kalownoski shall proceed, and the Court will exercise supplemental jurisdiction over Plaintiff's related state law claims. The remainder of the claims are dismissed. Warden Ellis, in his official capacity, shall be ordered to show cause why an injunction should not issue.

An appropriate order and order to show cause follow.

_12-9-15_
Date

ANNE E. THOMPSON
U.S. District Judge